IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

—————————————————————

WILLIAM FISHER,

                                    Plaintiff,

           vs.                                    Civil Action No.
                                                  5:06-CV-0841 (NAM/DEP)

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

                                    Defendant.

—————————————————————

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF:

OLINSKY, SHURTLIFF LAW FIRM          HOWARD OLINSKY, ESQ.
300 S. State St., 5th Floor
Syracuse, NY 13202

FOR DEFENDANT:

HON. GLENN T. SUDDABY                WILLIAM H. PEASE, ESQ.
United States Attorney for the       Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

—————————————————

        [1]      Plaintiff's complaint, which was filed on July 7, 2006, named Jo Anne B.
Barnhart, the former Commissioner of Social Security, as the defendant.  On February
12, 2007, Michael J. Astrue took office as Social Security Commissioner.  He has
therefore been substituted as the named defendant in this matter pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in
order to effectuate this change.  *See* 42 U.S.C. § 405(g).

OFFICE OF GENERAL COUNSEL          BARBARA L. SPIVAK, ESQ.
Social Security Administration            Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                       TOMASINA DiGRIGOLI, ESQ.
                                                    SENIOR ATTORNEY
DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>                    REPORT AND RECOMMENDATION</u>

 Plaintiff William E. Fisher, who suffers from the residual effects of

lumbar back surgery performed in 2002, including pain and numbness in

his back, hips, buttocks and legs, has commenced this action seeking

judicial review of a determination by the Commissioner that he does not

qualify to recover disability insurance ("DIB") and supplemental security

income ("SSI") benefits under the Social Security Act.  In support of his

challenge plaintiff argues that the pivotal finding of the administrative law

judge ("ALJ") assigned to hear and decide the matter, to the effect that he

is not disabled within the meaning of the Act, is not supported by

substantial evidence in the record and overlooks both contrary opinions of

his treating physician and his statements concerning the limitations which

he experiences as a result of his condition.  Plaintiff further maintains that

in arriving at his determination the ALJ improperly failed to fulfill his duty to

develop the record and that before rendering a decision he should have

taken measures to acquire more information concerning his mental and psychological condition.  Noting his belief that the evidence reflects his ability to meet the exertional demands of only sedentary work, and that when a proper residual functional capacity ("RFC") finding is applied to the medical vocational guidelines set forth in the regulations (the "grid"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, a finding of no disability is directed, plaintiff seeks reversal of the Commissioner's determination and a remand of the matter to the agency for the limited purpose of calculation of benefits owing.

Having carefully reviewed the record of evidence and proceedings before the agency, considered in the light of plaintiff's arguments, and applying the requisite deferential review standard, I find that while the Commissioner's determination is in most respects supported by substantial evidence, the ALJ's decision resulting in the denial of benefits fails to illuminate the basis for his rejection of plaintiff's complaints of disabling pain as is required by the controlling regulations.  Accordingly, I recommend that plaintiff's motion for judgment on the pleadings be granted, and the matter be remanded to the agency for further proceedings.

I.      BACKGROUND

Plaintiff was born in 1950; at the time of administrative hearing in this matter, he was fifty-four years old.  Administrative Transcript at 48, 104.[2]  Plaintiff is six feet tall, and weighs approximately one hundred eighty pounds.  AT 48, 116.  Plaintiff is married, and lives with his wife and their twelve year old daughter in a single level dwelling located in Fulton, New York.  AT 49, 106.  Plaintiff did not complete high school, and has never received a general equivalency diploma ("GED").[3]  AT 49, 123, 132.

Plaintiff last worked in June of 2002.  AT 50.  Prior to that date, Fisher was employed for twenty-two years in a variety of settings as a truck driver, a position which required him to engage in lifting of heavy objects, and involved mostly sitting.  AT 51-52, 116, 196-97.

In or about 2001 plaintiff was referred by his treating physician, Dr. Dhangri Soogree, to Dr. David A. Carter, a neurosurgeon, based upon complaints of persistent back and leg pain extending over a considerable period prior to that time.  See AT 199-206.  Plaintiff was diagnosed by Dr.

---

[2]     Portions of the administrative transcript filed by the Commissioner in the action, Dkt. No. 5, and comprised of proceedings and evidence before the agency, will be cited herein as "AT ___."

[3]     The record is somewhat equivocal as to the highest school grade completed by the plaintiff.  Compare AT 49 (seventh grade) with AT 123, 132 (ninth grade).

Carter as suffering from a degenerated disc at the L5 level, with evidence of lumbar radiculopathy consistent with impingement of the lumbar canal and symptomatic involvement of nerve roots, and plaintiff was noted to be a potential candidate for remedial surgery.  *Id.*  At that time, however, plaintiff neither underwent surgery, nor is there any evidence of his return to Dr. Carter until several months later when, in August of 2002, he was seen after having reported experiencing work-related injury causing aggravation to his preexisting back condition.  AT 203-04.  Further testing and treatment led to a recommendation of surgical intervention in September of 2002.  AT 205-06.

Plaintiff underwent lumbar decompression and fusion surgery at Crouse Hospital, located in Syracuse, New York, on December 13, 2002. AT 283-87.  The initial portion of the surgery was undertaken by Dr. Carter, who performed a lumbar decompression procedure.  *Id.*  Dr. Richard DiStefano, an orthopedic surgeon, then performed a fusion at the L5-S1 level bilaterally.  *Id.*  By all accounts, plaintiff's surgery was successful, to a point when in February of 2003, he reported that his overall level of pain was better, although he still experienced some muscle spasms.  AT 208.

-5-

Following his surgery, plaintiff continued to treat periodically with his regular physician, Dr. Soogree, as well as Dr. Carter and Dr. DiStefano or one or more of his partners at Syracuse Orthopedic Specialists.  *See, e.g.,* AT 222-37, 314-15, 355-76 (Dr. Soogree); AT 207-211 (Dr. Carter); AT 270-79.  Over time, plaintiff has continued to complain of aching and numbness, but has been treated fairly conservatively, principally through the prescription of pain medications.  *Id.*

II.   PROCEDURAL HISTORY

    A.   Proceedings Before The Agency

On June 30, 2005, plaintiff filed applications for DIB and SSI payments with the agency, alleging a disability onset date of June 2, 2002.  AT 104-06, 387-99.  Following the denial of those applications, *see* AT 67, 74-78, 400, 401-05, a hearing was conducted, at plaintiff's request, on May 25, 2005 before ALJ Robert E. Gale to address plaintiff's request for Social Security benefits.  AT 45-64.

ALJ Gale issued a written decision on July 26, 2005, setting forth his finding that plaintiff was not disabled at the relevant times, and accordingly not entitled to the requested benefits.  In his decision, after conducting a *de novo* review of the available evidence and medical records and

applying the now-familiar, five part sequential test for determining disability, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability.  AT 23.  ALJ Gale next concluded that plaintiff's physical and mental conditions are sufficiently severe, within the meaning of the Act and corresponding regulations, to qualify at step two of the analysis but do not, either singly or in combination, meet or equal any of the listed, presumptively disabling impairments set forth in the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.[4]  AT 24.

Before proceeding to step four of the disability algorithm, ALJ Gale canvassed the available medical records in order to determine plaintiff's RFC, concluding that he retains the ability to essentially perform all of the exertional requirements of light work, rejecting a more limiting RFC assessment by Dr. Soogree, plaintiff's treating physician.  AT 25-26. Applying his RFC finding, ALJ Gale concluded that plaintiff is unable to perform his past relevant work as a truck driver, given its significant

---

[4]      Addressing plaintiff's mental condition, ALJ Gale concluded that Fisher suffers from an adjustment disorder with mixed features.  AT 24.  While that determination is based upon a consultative examination conducted by Dr. Jeanne Shapiro, a psychologist, in July of 2004, it should be noted that the record does not disclose that plaintiff has been hospitalized or sought professional treatment for any mental or psychological impairment.

exertional requirements.  AT 26.  Turning to the fifth and final step of the

disability test, and applying his RFC findings to the grid, consulted as

providing framework for determining plaintiff's ability to perform available

work within the national economy, ALJ Gale concluded that a finding of no

disability was warranted, and that Fisher was therefore not entitled to the

benefits sought.[5]  AT 26-28.

ALJ Gale's opinion became a final determination of the agency on

May 30, 2006, when the Social Security Administration Appeals Council

denied his request for review of that decision.  AT 6-8.

B.    This Action

Plaintiff commenced this action on July 7, 2006.  Dkt. No. 1.  Issue

was thereafter joined by the Commissioner's filing of an answer on the

agency's behalf on October 5, 2006, Dkt. No. 6, preceded by the filing of

an administrative transcript of the proceedings and evidence before the

agency on September 6, 2006.  Dkt. No. 5.  With the submission of

plaintiff's brief on December 20, 2006, Dkt. 9, and that on behalf of the

Commissioner on February 20, 2007, Dkt. No. 11, the matter is now ripe

_____

[5]       Prior to consulting the grid, ALJ Gale noted his finding that plaintiff's
nonexertional limitations do not significantly restrict his ability to perform the full range
of jobs upon which the grid is predicated.

for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).[6]  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Scope of Review

     A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably

---

[6]     This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148.  If,

however, the correct legal standards have been applied and the ALJ's

findings are supported by substantial evidence, those findings are

conclusive, and the decision should withstand judicial scrutiny regardless

of whether the reviewing court might have reached a contrary result if

acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859

F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314

(N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

　　　The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184

(2d Cir. 2003).  To be substantial, there must be "'more than a mere

scintilla'" of evidence scattered throughout the administrative record.

*Richardson,* 402 U.S. at 401, 91 S. Ct. at 1427; *Martone,* 70 F. Supp. 2d

at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's

findings are supported by substantial evidence, a reviewing court

considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235;

-11-

*Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992);

*Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir.

1983).

      B.    <u>Disability Determination - The Five Step Evaluation Process</u>

      The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.] " 42 U.S.C. §

423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must
> be] of such severity that he is not only unable to do
> his previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

      The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

-12-

the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled". *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

      C.     <u>The Evidence In This Case</u>

          1.     <u>Duty to Develop the Record</u>

Plaintiff maintains that given the evidence compiled in the record, reflecting that plaintiff's education ended at or about the ninth grade, and with a consultative finding by Dr. Shapiro that he suffers from borderline intellectual functioning, *see* AT 49, 132, 328, the ALJ was obligated to develop the record regarding his mental status by ordering a consultative intelligence evaluation.

Undeniably, a Social Security hearing is not an adversary proceeding, in the true sense; accordingly, when presiding over such a hearing an ALJ is under an affirmative duty to develop a proper

-14-

administrative record and to take measures reasonably calculated to fill critical voids in the available data.  *Shaw*, 221 F.3d at 131.  And, while the plaintiff in this case was represented by counsel, who it should be noted did not at the time of the hearing raise any questions concerning the completeness of the record, particularly as it relates to plaintiff's mental status, this factor is not dispositive of the issue now raised, since "[t]he statutory duty of an ALJ to issue subpoenas or take other actions *sua sponte* as necessary to develop the record applies, of course, to all claimants, and not just those who appear *pro se*."  *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (internal citations omitted).

As a threshold matter it should be noted that in his application for Social Security benefits, plaintiff relied exclusively upon his physical condition as establishing the requisite disability, and did not claim or intimate that he additionally suffers from mental or psychological deficiencies.  *See* AT 117.  Similarly, at the hearing plaintiff did not offer any evidence of an intellectual deficiency, and indeed testified that it was because of his physical condition that he could no longer drive trucks, going on to state that the only medical issue keeping him from working related to his back injury.  *See* AT 52-53.  Plaintiff also stated during his

testimony that he had never been hospitalized for any mental condition, nor had he received any psychological counseling.  AT 54.

While plaintiff's medical records do not disclose the presence of a psychological or mental impairment, he nonetheless underwent a consultative psychiatric examination by Dr. Jeanne Shapiro in July of 2004.  AT 326-29.  While it is true that Dr. Shapiro found plaintiff's intellectual functioning to be in the borderline range, she also concluded that "[h]is general fund of information appears to be appropriate to experience."  AT 328.  Based upon her examination, Dr. Shapiro diagnosed plaintiff as suffering from an adjustment disorder with mixed features, and recommended that he consider "short-term individual psychological treatment to help him adjust to his limitations."  AT 329. Describing plaintiff's symptoms as "mild and transient" and not interfering with his overall daily functioning, Dr. Shapiro concluded that any "[v]ocational difficulties appear to be primarily caused by medical problems."  AT 329.

Under these circumstances, there does not appear to be any critical void in the record which should have been filled before the ALJ made his findings regarding disability, and the Commissioner's determination of no

-16-

disability accordingly is not infected by this claimed error.

2.    Rejection of Treating Source Assessment

Plaintiff next challenges the ALJ's RFC determination, which served as the lynchpin of his finding of no disability, maintaining that it resulted from the improper rejection of contrary opinions of his treating physician, Dr. Soogree, concerning the limitations imposed by Fisher's physical condition.

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp. 2d at 316.[7]  Such opinions are not controlling,

---

[7]    The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

however, if contrary to other substantial evidence in the record, including the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588. Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner. *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]" *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions. *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

In his decision, ALJ Gale concluded that plaintiff retains the RFC to

lift and carry twenty pounds occasionally and ten pounds frequently, and

to stand for four hours, walk for two hours, and sit for six hours in an eight

hour work day, additionally concluding that he should avoid certain other

circumstances including concentrated exposure to fumes, dust, odors and

gas, and use of ladders, and scaffolds as well as crawling.[8]  AT 26, 28.  In

arriving at that RFC finding, the ALJ placed significant reliance upon an

RFC assessment of a state agency review physician, completed on

August 10, 2004, AT 335-40, supportive of that RFC determination,

---

[8]      The exertional elements of the ALJ's RFC finding generally correspond to the requirements associated with light work, which is defined under the governing regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

rejecting a much more limiting RFC assessment issued by Dr. Soogree in April of 2005.  AT 25-26.

The ALJ's RFC finding is supported by both the August 10, 2004 state agency review physician assessment now assailed by the plaintiff, as well as the results of an examination by consultant Dr. Kalyani Ganesh, performed in July of 2004.  *See* AT 331-33.  After reviewing plaintiff's medical records, an agency medical consultant concluded that plaintiff is able to lift twenty pounds occasionally and ten pounds frequently, can stand and/or walk, and sit, for approximately six hours out of an eight hour work day, and is otherwise essentially unlimited by his medical conditions. AT 335-40.  As a result of his examination of the plaintiff, Dr. Ganesh concluded that Fisher is only moderately limited in his ability to sit, stand, climb, carry, push, pull and bend.  AT 333.  These two consultative findings are fully supportive of the ALJ's RFC determination.  AT 336-38.

Plaintiff is mistaken to the extent he intimates that an ALJ cannot elevate the opinions of state agency consultants, however supported by medical evidence in the record, over those of a treating source, whose opinions may not coincide with available medical evidence.  To the contrary, an opinion rendered by a non-examining source can serve to

-20-

override a treating source's opinion provided it is supported by substantial evidence in the record. *Diaz v. Shalala*, 59 F.3d 307, 317 n.5 (2d Cir. 1995); *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

As the ALJ noted, Dr. Soogree's opinions, to the effect that plaintiff is severely limited in his ability to lift, sit, stand and walk, are markedly in conflict with medical records in evidence, which reflect a fairly conservative course of treatment subsequent to the December, 2002 surgery. Indeed, in February of 2004, in connection with a prior application for disability benefits which was subsequently denied, Dr. Soogree noted that plaintiff's condition was stable, and he appeared able to manage his pain, and opined that he had suffered from only a moderate degree of disability. *See* AT 339. It should be noted, moreover, that Dr. Soogree is not plaintiff's orthopedic specialist, but instead is his general treating physician, a factor to be considered in determining the degree of deference owed to his opinions. *See* 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii) and (d)(3)-(5); *see also Iannopollo v. Barnhart,* 280 F. Supp. 2d 41, 48 (W.D.N.Y. 2003). Moreover, Dr. Soogree's opinions are substantially at odds with notations from plaintiff's specialists, particularly Dr. DiStefano, revealing a conservative course of treatment. *See, e.g.,* AT 271, 273,

275.

Based upon these circumstances, I find that the ALJ's rejection of Dr. Soogree's opinions regarding plaintiff's exertional abilities was both properly explained, and is supported by substantial evidence in the record.

3.   Plaintiff's Credibility

During the administrative hearing plaintiff testified that his back condition precludes him from working, and that he suffers from extreme pain at times, as well as numbness and burning in his legs and hips.  AT 52-53.  In arriving at his determination that the plaintiff is not disabled, ALJ Gale considered and rejected this testimony as "not entirely credible; at least not to the extent that he would be unable to perform work at any level of exertion."  AT 26.

The plaintiff in this case plainly suffers from a documented medical condition which could reasonably be expected to produce the level of pain attributed by him to his condition.  Under these circumstances the ALJ was required by the controlling regulations to evaluate the intensity, persistence and limiting effects of the plaintiff's symptoms to determine the extent to which they impose limitations on his ability to perform basic work activities.  Social Security Ruling ("SSR") 96-7p; *see Martone*, 70 F. Supp.

2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)) (indicating that where an ALJ rejects a claimant's subjective complaints of pain, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence).  Such an analysis and discussion is conspicuously absent from ALJ Gale's decision.  While, as the Commissioner argues, there is evidence in the record tending to suggest that the limitations claimed by the plaintiff to result from his back condition are overstated, the ALJ's determination is devoid of any meaningful analysis and discussion of the factors which he was obliged to consider, and provides no enlightenment as to the basis for his rejection of those complaints which could then be tested against the record evidence.  Under these circumstances, I recommend that the Commissioner's determination be vacated and the matter remanded for further consideration.[9]

---

[9]      In seeking a remand plaintiff contends that the evidence firmly establishes his inability to perform more than sedentary work and that, because the grid would direct a finding of disability with a sedentary work RFC finding, the matter should be remanded with a directed finding of disability.  Because the record could admit of an RFC finding which exceeds mere sedentary work, I recommend against a directed finding of disability at this stage.

4.     ALJ's Resort to the Grid

In further support of his challenge to the Commissioner's determination, plaintiff asserts he experiences nonexertional limitations which sufficiently erode the job base upon which the grid is predicated as to require, at step five of the sequential analysis, the elicitation of testimony from a vocational expert.

Ordinarily, the Commissioner can meet his burden in connection with the fifth step of the relevant disability test by utilizing the grid. *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). The grid takes into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy. *Rosa*, 168 F.3d at 78. Whether or not the grid should be applied in order to make a step five determination presents a case-specific inquiry which depends on the particular circumstances involved. *Bapp*, 802 F.2d at 605. If a plaintiff's situation fits well within a particular classification, then resort to the grid is appropriate. *Id.* If, on the other hand, nonexertional impairments, including pain, *significantly* limit the range of work permitted by exertional limitations, then use of the grid is

-24-

inappropriate, in which case further evidence and/or testimony is required.[10]  *Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06.

In this instance, the result dictated by the grid is dependent upon the extent of plaintiff's exertional limitations, and specifically whether plaintiff is able to perform exertional requirements of a full range of light work, or instead is limited to the exertional requirements associated with sedentary work. The ALJ also noted that plaintiff suffers from certain modest nonexertional limitations, including the requirement that he avoid concentrated exposure to fumes, dust, odors and gas as well as ladders, scaffolds and crawling.  AT 26.  The impact of these additional limitations, however, on plaintiff's ability to perform a full range of work associated with the grid is generally considered to be minimal, *see* SSR 85-15 and SSR 83-14, and plaintiff does not argue otherwise.

Plaintiff's quarrel with the ALJ's resort to the grid surrounds the impact of his diagnosed adjustment disorder, determined by the ALJ to be

---

[10]     As one court has explained,

> [a] nonexertional limitation is one imposed by the claimant's impairments that affect [his or] her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain.

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569(a), (c)).

sufficiently severe as to quality at step two of the sequential analysis.  In

his utilization of the grid as a framework, the ALJ specifically addressed

the nonexertional limitations associated with plaintiff's adjustment

disorder.  *See* AT 27-28.  Though not expressly stated and discussed in

any detail, implicit in his decision is the ALJ's belief, based upon his

review of the available evidence, that plaintiff's adjustment disorder, which

has never required either hospitalization or treatment, *see* AT 326, did not

sufficiently narrow the range of work which plaintiff is capable of

performing as to erode the job based upon which the grid is predicated.

AT 27-28.  This apparent finding is amply supported by substantial

evidence including in particular the consultative report of Dr. Jeanne

Shapiro, who opined that plaintiff's "[v]ocational difficulties appear to be

primarily caused by medical problems", adding that

> [v]ocationally, the claimant appears to be capable
> of understanding and following simple instructions
> and directions.  Barring any medical
> contraindications, he appears to be capable of
> performing simple and complex tasks with
> supervision and independently.  He appears to be
> capable of maintaining attention and concentration
> for tasks.  He can regularly attend to a routine and
> maintain a schedule.  He appears to be capable of
> learning new tasks.  He appears to be capable of
> making appropriate decisions.  He appears to be
> able to relate to and interact appropriately with

> others but may feel uncomfortable in a group.  He
> appears to be capable of dealing with stress.

AT 329.   Under these circumstances, the existence of nonexertional

limitations stemming from plaintiff's physical and mental conditions do not

provide a basis for rejecting the grid in favor of the testimony of a

vocational expert at step five of the disability catechism.

IV.    SUMMARY AND RECOMMENDATION

By all accounts, while plaintiff suffers from a documented lower back

condition which has caused pain and numbness extending from his back

into his hips and buttocks, and radiating into his legs and feet, since his

operation he has done well for that condition and has undergone only

relatively modest treatment.  While there is indication that plaintiff suffers

from a mental impairment of modest proportions, the relatively benign

nature of that condition coupled with the fact that he has not required

hospitalization or treatment for that condition suffices to excuse any failure

to develop the record concerning plaintiff's borderline intellectual

functioning.  The ALJ's rejection of RFC opinions of plaintiff's treating

general practitioner, Dr. Soogree, concerning his limitations also was

properly explained.  Additionally the ALJ's reliance upon the grid as

providing a framework for determining the issue of disability was

-27-

appropriate given the minimal impact of plaintiff's nonexertional limitations on his ability to perform a full range of jobs upon which the grid is based.

Turning to the issue of credibility, however, given that the plaintiff suffers from a medically documented condition which reasonably could be expected to cause the level of pain testified to by the plaintiff, the ALJ was duty bound to explain his rejection of the subjective complaints with reference to the factors specified by regulation, but failed to do so. Accordingly, it is hereby

RECOMMENDED that plaintiff's motion for judgment on the pleadings be GRANTED, the Commissioner's finding of disability be VACATED, and the matter REMANDED to the agency for further consideration consistent with this recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

Dated:      February 19, 2008
            Syracuse, NY


David E. Peebles
U.S. Magistrate Judge